Dennis Acker, Esq. Bar No. 9911055
ACKER & ASSOCIATES
329 F. Street, Suite 220
Anchorage, AK 99501
(907) 222-2885
Fax (907) 222-2889

Attorneys for Plaintiff
Robert Borgen

RECEIVED
MAR 0 6 2006
CLERK U.S. DISTRICT COURT
ANCHORAGE ALASKA

# SUPERIOR COURT FOR THE STATE OF ALASKA

# THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| ROBERT BORGEN, Individually, | Case No.: |
| Plaintiff, | COMPLAINT AND DEMAND FOR JURY TRIAL |
| vs. | |
| UNITED PARCEL SERVICE, a foreign corporation. | |
| Defendants. | |

COMES NOW Plaintiff Robert Borgen, by and through his counsel of record, Dennis R. Acker, Esq. and files his original complaint and alleges as follows:

1. Plaintiff is a U.S. citizen and a resident of Anchorage, Alaska.

2. Defendant United Parcel Service ("UPS") is a foreign corporation licensed to do business in the State of Alaska.

3. Jurisdiction and venue are proper in this judicial district pursuant to Civil Rul 3(c) because all of the acts complained of herein occurred in Anchorage, Alaska.

Complaint;
Borgen v. UPS et al.
Page 1



## FACTUAL BACKGROUND

8. Mr. Borgen began working at UPS in May 1985. After working at UPS for over three years, Mr. Borgen was told by his supervisors Jay Marshall and Tom Leonard in 1988 that he was too old for the job, and that they would make sure that Mr. Borgen was fired or harassed him into resignation. Since that time, Mr. Borgen has been the subject of a dedicated plan by UPS to harass and discriminate against Mr. Borgen on the basis of his age and disability in an effort to force him to resign.

9. Early instances of harassment include suspension from work for Mr. Borgen allegedly threatening to take a gun into the work place and "lock and load". This allegation, made by John Romig, was completely erroneous and unfounded. Mr. Borgen was cleared of this allegation when he attended psychological counseling. The reports from that counseling clearly indicate that Mr. Borgen is a non-violent person. He also had several statements from co-workers and friends since childhood testifying to his non-violent nature. Mr. Borgen was still suspended during the investigation and was forced to attend psychological counseling for his "violent threats".

9. Mr. Doug Berry, UPS supervisor, has also written up Mr. Borgen for wearing support suspenders on the job because it was not a part of the normal UPS uniform. Mr. Borgen provided a doctor's note explaining that he needed to wear suspenders for support, but management continued to deride him and write him up for uniform violations. Mr. Borgen was told that the suspenders did not fit the image of a young UPS driver and he was continually ridiculed and written up for alleged uniform violations even after he provided the doctor's note proving his disability due to a hernia.

10. In 1999, UPS suspended Mr. Borgen from work when a child hit Mr. Borgen's truck with a snow sled while Mr. Borgen was stopped at a stoplight. This was Mr. Borgen's first accident in 16 years of service. The accident was clearly not Mr. Borgen's fault, yet he was suspended. Mr

Complaint;
Borgen v. UPS et al.
Page 2

Borgen was eventually cleared, but there was no proper reason for the suspension. At that time, Mr. Borgen was called into the supervisors office (Mr. Jeff Baxter) and threatened with discharge despite the fact that other younger employees had been in accidents that were their fault and not been threatened with discharge. The underlying reason for this disparate treatment is age discrimination. UPS management thereafter continued to harass plaintiff into resigning because of his age.

11.  Mr. Borgen's work related stress stems from not only the above events, but also recent age discrimination and harassment occurring just prior to his constructive discharge on February 27, 2003. Mr. Borgen's normal route was over one and one half hours too long. The only 2 drivers able to complete the route in the allotted time are forced to forego lunch and other break time, and to come into work early and leave late in order to get the proper paperwork done. All other drivers that drive during normal union work hours on Mr. Borgen's route cannot complete the route on time and were frequently over one and one half hours out on a routine basis. The route simply cannot be completed on time if a driver follows normal union rules and the collective bargaining agreement. Yet, Mr. Borgen has been written up several times for going over his allotted time.

12.  Mr. Borgen has been subject to extremely intense scrutiny by management including excessive "ride-alongs" by a supervisor on his route and harassing checks on him through the use of the UPS onboard time computer. The collective bargaining agreement requires that employees not be subjected to scrutiny on the basis of the computer reports and prohibits more than one ride along with an employee every year. Further the collective bargaining agreement forbids "tracking" employees with the on-board computer. Mr. Borgen has been subjected to intense reprimands and scrutiny with the use of the UPS onboard computer and had 17 supervisor ride-alongs in 1999 and 31 supervisor

Complaint;
Borgen v. UPS et al.
Page 3

ride-alongs in the 2002-2003 time period. Even with the manager helping Mr. Borgen on the ride-along, the route could not be completed on time without violating union work rules. The route is simply too long and Mr. Borgen was assigned to the route in order to harass him in the work place. Despite this fact, Mr. Borgen was repeatedly written up by Mr. Stan Colton and other UPS supervisors for "unacceptable performance" after these ride-alongs. UPS has repeatedly told Mr. Borgen that he is too old for the job and that it is a young man's profession. He has been told on numerous occasions that he does not fit the image of a young and fit UPS driver.

13. In February of 2003, Mr. Borgen was involved in a minor accident when he slid on an icy street at very low speed. Doug Berry, his supervisor, wrote a letter to Mr. Borgen for having a "problem" and he was being given an opportunity to correct his "problem". Mr. Berry threatened Mr. Borgen with discharge, but did not identify the "problem" Mr. Borgen was supposed to correct. Mr. Berry had repeatedly told Mr. Borgen prior to this incident that he was going to get Mr. Borgen fired and that he would continue to write him up over his suspenders despite knowing Mr. Borgen had a doctor's note for the suspenders. On more than one occasion, managers have been witnessed making derogatory statements about Mr. Borgen to other co-workers and targeting Mr. Borgen for termination because of his age.

14. Mr. Borgen has post-traumatic stress disorder as a result of his service in the Vietnam War. Mr. Borgen served honorably in the Vietnam War as a forward field observer and earned the Bronze Star for his service. UPS knew this fact in November 1998 but still continued the discrimination and harassment in order to drum Mr. Borgen out of his service for UPS. These acts are in contravention of both the ADA and ADEA. UPS' continual work related harassment of Mr. Borgen triggered the onset of symptoms of Post Traumatic Stress Disorder (PTSD). This has been

documented by James K. Timmons, Ph.D., clinical psychologist for Mr. Borgen. Mr. Borgen's condition, caused by the UPS management and the resulting stressful and hostile work environment effectively caused his discharge on January 15, 2004.

15. UPS has denied Mr. Borgen payment for accrued vacation benefits in an attempt to force him to release his claims of discrimination and constructive discharge. These are further retaliatory acts of discrimination.

16. On February 27, 2003, Mr. Borgen was constructively discharged by UPS after undergoing continuing harassment and discrimination for several years. This has directly and proximately caused him to suffer loss of past and future wages, pension and other work related benefits in excess of $50,000; in an exact amount to be proven at trial.

17. Defendant's discrimination and harassment have directly and proximately caused plaintiff to suffer emotional harm and mental anguish requiring medical treatment, prescription medications and psychological treatment.

## COUNT II

**Violation of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act**

18. Defendant's discriminatory and harassing conduct toward plaintiff is a violation of the Federal Civil Rights act of 1964 and the Age Discrimination in Employment Act.

19. Defendant's actions in violation of the ADEA and the federal Civil Rights Act directly and proximately caused plaintiff damages in excess of $50,000 in an amount to be proven at trial.

## COUNT III

### Violation of the Alaska State and U.S Constitutions

20. Defendants' discriminatory conduct violates Article 1, clause 3 of the Alaska State Constitution and the Fifth and Fourteenth Amendments of the U.S. Constitution.

21. Such conduct directly and proximately caused plaintiff damages in excess of $50,000 in an amount to be proven at trial.

## COUNT IV

### Intentional Infliction of Emotional Distress

22. Defendant's continual harassment of plaintiff was done intentionally and with malicious intent to drive him from his place of employment. Such conduct directly and proximately caused plaintiff to suffer damages in excess of $50,000 the exact amount to be proven at trial.

## COUNT V

### Violation of the Americans with Disabilities Act

23. Defendant knew plaintiff suffered from a recognized disability known as post-traumatic stress disorder. Despite knowing this, defendant took no action to accommodate plaintiff in the work place. Further, UPS and its employees purposefully continued to harass and discriminate against plaintiff because of his age and disability with a specific stated aim to drive him form his position at UPS.

24. Defendant's actions in this regard were willful and knowing violations of the American with Disabilities Act and effectively denied planiitff access to the workplace. Such conduct directly and proximately caused plaintiff damages in an amount to be proven at trial.

## COUNT VI

### Violation of AS 18.80.220

25. Defendant's discriminatory and harassing conduct toward plaintiff is a violation of AS Section 18.80.220.

26. Defendant's actions in violation of AS 18.80.220 directly and proximately caused plaintiff damages in excess of $50,000 in an amount to be proven at trial.

## PRAYER FOR RELIEF

1. That plaintiff be awarded damages for back pay, lost future earnings, lost pension and medical benefits against all defendants in an amount in excess of $50,000, the exact amount to be proven at trial.

2. That plaintiff be awarded damages in excess of $50,000 for pain and suffering and mental anguish suffered as a result of defendants' discriminatory acts

3. That plaintiff be awarded penalties under the state and federal statutes mentioned above for willful violation of the acts.

4. That plaintiff be awarded punitive damages for UPS' willful and malicious conduct in excess of $500,000.00 in an amount to be proven at trial.

5. That Plaintiff be awarded actual reasonable attorneys fees and costs, and pre and post judgment interest pursuant to the federal Civil Rights Act of 1964 and the ADEA.

6. For all other relief right and proper in the premises.
Complaint;
Borgen v. UPS et al.
Page 7

**Demand for Jury Trial**

Plaintiff demands trial by jury as to any and all claims for which a right to trial by jury is available under any state or federal statute or the Alaska or U.S. Constitutions.

DATED this 25th day of February 2005.

                          RESPECTFULLY submitted,

                          Dennis R. Acker, Esq.
                          Bar No. 9911055
                          Acker & Associates
                          329 F. Street, Suite 220
                          Anchorage, AK 99515
                          (907) 222-2885

                          Attorney for Plaintiff