Thomas M. Daniel, Esq.
Perkins Coie LLP
1029 W. Third Avenue, Suite 300
Anchorage, Alaska  99501
(907) 279-8561
(907) 276-3108 (Facsimile)
tdaniel@perkinscoie.com

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

ROBERT BORGEN,

          Plaintiff,

v.

UNITED PARCEL SERVICE,

          Defendant.

Case No. A05-0056 CV (JWS)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a discrimination case brought by Robert Borgen ("Borgen")
against his former employer United Parcel Service ("UPS").  In February 2003,
Borgen quit his job and never came back.  Now, Borgen claims to have been
discriminated against by UPS on the basis of his race (white), age (52 years old)
and disability (post-traumatic stress disorder, hereinafter "PTSD") in violation of
AS 18.80.220.  UPS moves for summary judgment on Borgen's AS 18.80 claim.[1]

---

[1] This is the only issue left to be litigated in this case.  UPS has already
been granted summary judgment on Borgen's other claims.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

## BACKGROUND

Borgen began working for UPS in May 1985 as a driver. (Complaint, at ¶ 8.) Borgen alleges that he was subjected to various acts he considered "discriminatory" in the 18 years that he worked for UPS. He alleges that he was constructively discharged by UPS on February 27, 2003 after he unilaterally abandoned his job. (Complaint, at ¶ 11.) Borgen filed the complaint in this action on February 25, 2005.

## I.    Most of Borgen's Complaints Concerning UPS Allegedly Occurred More Than Two Years Prior to When He Quit His Job.

Borgen's allegations of discrimination are detailed in his complaint. In 1988, fifteen years before Borgen walked-off the job at UPS, UPS supervisors allegedly told Borgen that he was too old for the job. Ex. B at 62-69.

In 1998, UPS received a report that Borgen threatened to take a gun into the workplace and "lock and load." Ex. B at 69-71. In response, UPS sent Borgen a warning letter and briefly suspended him. Ex. B. at 18-21. Borgen's union filed a grievance and the matter was resolved in Borgen's favor. Ex. B. at 19-21. Also in 1998, Borgen claims that he was "harassed" because he wore suspenders in violation of UPS's dress code.[2] Ex. B at 71. Borgen spoke with his union shop steward about the incident and chose to wear a vest so that his suspenders were not

---

[2] Borgen needed to wear suspenders because of a hiatal hernia. Ex. B at 72. This hernia does not interfere with Borgen's ability to work, sleep or walk. Ex. B at 77-79.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

visable. Ex. B. at 74-75. Borgen has not been harassed about the suspenders since that time. Ex. B at 75.

In 1999, a truck that Borgen was driving collided with a child who was sledding. Ex. B. at 79. Borgen was suspended for ten days, but given full back pay during that time. Ex. B at 79-80. Borgen was not disciplined as a result of this accident. Ex. B at 79-80.

## II.     UPS Managers Would Ride with Borgen on His Route to Determine Why He was Taking So Long.

Borgen also complained that, ever since he originally started working for UPS in 1985, his route took too long to accomplish and he could not perform it in a nine and a half to ten hour day that was allotted for the route. Ex. B at 35-36, 42-48. Other drivers also complained that it took longer to perform their route than it should have. Ex. B at 50-51. The other drivers allegedly solved this problem, in part, by working off the clock. Ex. B at 87-88. However, Borgen did not work off the clock and UPS never complained to Borgen about being paid the overtime. Ex. B at 93. While the applicable collective bargaining agreement gave Borgen "the right to file a grievance if the Company has continually caused him to work over nine and one-half (9-1/2) hours per day," Borgen never filed a grievance. Ex. C, Article 19; Ex. B at 92-93.

UPS had been told by its computer that Borgen was taking a longer time with his route than it should have. Ex. B at 85-86. UPS could not determine why this was the case as the two other drivers who worked Borgen's route could complete it in the appropriate amount of time. Ex. B at 86-87. In order for UPS to determine why, it accompanied Borgen on his route (known as a "ride along") to

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

determine whether it could be done faster. Borgen's collective bargaining agreement allowed him to file a grievance if he believed that he had been subjected to too many ride alongs. Ex. D. Article 37, Section 3 ("Where an employee has submitted a grievance regarding an excessive number of rides, no member of management shall ride with that employee unless and until the local level hearing is concluded"). Borgen never filed such a grievance. Ex. B at 91. Borgen had never been disciplined about the amount of time that it took for him to perform his route. Ex. B at 107.

**III.    UPS Accompanied Borgen on His Route, Pursuant to Its Policies, After Borgen Was Involved in a Traffic Accident.**

On February 24, 2003, Borgen was involved in an auto accident in a UPS truck. Ex. B at 107-10. Borgen was making a right turn onto another street and the rear tires slid out and collided with another car. Ex. B at 110. Borgen was cited by the police for the accident. Ex. B at 121. UPS determined that the accident was avoidable and immediately issued Borgen a warning letter the same day. Ex. B at 121-22; *see also*, Ex. G (Auto Accident Prevention Form dated by Borgen on February 24, 2003 and determining that the accident was avoidable). Borgen testified that the warning letter "meant nothing" and did not file a grievance because of the warning letter. Ex. B at 114-15. The collective bargaining agreement applicable to Borgen gave him the right to file a grievance after receiving a warning notice. Exhibit C at WCA, Article 28, Section 2(b) (stating that the Union has the right to protest any warning notice).

In response to that accident, UPS performed a "ride along" with Borgen on February 26, 2003. Declaration of Douglas Berry (attached hereto as Exhibit

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

A); Ex. F.  This ride along was pursuant to UPS's policy that drivers who are

involved in a traffic accident must be evaluated to ensure that they are driving

safely.  *Id.*; *see also*, Ex. F (Package Driver Space and Visibility Ride with

"Accident Follow-Up" noted as the "Reason for Training").

### IV.    Borgen Has a Mental Breakdown on February 27, 2006, Stops His Car and Never Works for UPS Again.

On February 27, 2003, Borgen had a mental breakdown while he was

driving his UPS truck.  Ex. B at 119.  Borgen describes this breakdown as

uncontrollable crying.  Ex. B at 120.  Borgen went to the Veteran's Administration

and saw a therapist.  Ex. B at 121.  He was later diagnosed with post-traumatic

stress disorder and has been unable to work any job since.  Ex. B at 122-23.

Borgen filed a complaint initiating this action on February 25, 2005.

## ARGUMENT

### I.    Standard For Summary Judgment.

Under Federal Rule of Civil Procedure 56, summary judgment is

appropriate if the court finds "that there is no genuine issue as to any material fact

and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c).  "[A] party seeking summary judgment always bears the initial

responsibility of informing the district court of the basis for its motion" and of

identifying those portions of the record which demonstrate the "absence of a

genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

S. Ct. 2548, 2553 (1986).  The nonmoving party can overcome such a showing

only by setting forth specific facts that could support a jury verdict in its favor.

Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

S. Ct. 2505, 2510 (1986). Plaintiff's allegations, speculations, or conclusions, as well as inadmissible evidence, are insufficient to meet this burden. *See Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991), *cert. granted*, 503 U.S. 958 (U.S. 1992), and *aff'd*, 508 U.S. 49 (U.S. 1993); *Forsberg v. Pacific Northwest Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir.), *amended*, 46 Empl. Prac. Dec. (CCH) ¶ 37,996 (9th Cir. 1988).

A genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. In the absence of such facts, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552. There can be no genuine issue of material fact where the nonmoving party has failed to show the existence of an essential element to that party's case. *Id.* at 477 U.S. at 323, 106 S. Ct. at 2552. Even if all of the facts are taken as alleged by Borgen in the complaint, the claims asserted in Counts II, III, IV and V of the complaint should be dismissed as a matter of law.

## II.    Borgen Cannot Establish a Prima Facie Claim of Discrimination.

Borgen has alleged that he was terminated in violation of AS 18.80.220 because of: (1) his race (White); (2) his age (52 years old at the time he walked off the job); and (3) his disability (post-traumatic stress disorder). To establish a prima facie case for illegal disparate treatment discrimination based on race, age or disability under AS 18.80, Borgen must establish:

> (1) that he is within the protected class, (2) that he was qualified for the job and performing according to the legitimate expectations of the employer, (3) that he was adversely affected by an employment

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

decision, (4) and that others, who are not within the protected class, were treated more favorably.

*Haroldsen v. Omni Enters.*, 901 P.2d 426, 430 (Alaska 1995); *see also, Miller v. Safeway, Inc.*, 102 P.3d 282 (Alaska 2004).  Borgen's disability, age and race discrimination claims fail because he cannot show that he suffered an adverse employment action, such as a termination or suspension.  Instead, Borgen decided to walk off the job on February 27, 2003.

As to Borgen's claim of disability discrimination, Borgen cannot establish the first element of this claim – that he was a member of a protected class.  In order to establish this claim, Borgen must prove that he was disabled during the time he worked for UPS.  Here, there is no such proof.

Borgen cannot establish the fourth element of his *prima facie* case for his race and age discrimination claim.  Borgen must prove that others, who were not in the protected class, were treated more favorably.  Borgen alleges that UPS was out to get him because he was white, but he ignores the fact that approximately 75% of UPS drivers in Anchorage were also white.  Borgen also alleges that UPS was out to get him because of his age.  However, almost a third of the UPS drivers Borgen worked with were approximately the same age.

**A.   Borgen cannot establish an adverse employment decision because he cannot establish a constructive discharge.**

The only possible adverse employment action which Borgen might be able to rely on in this action is a constructive discharge theory.  "Constructive discharge is not an independent cause of action, but merely satisfies the discharge element of a wrongful discharge claim."  *City of Fairbanks v. Rice*, 20 P.3d 1097,

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT          - 7 -          [00895-1012/AA061250.001]

1102 n.7 (Alaska 2000). In determining whether a resignation may be treated as a

constructive discharge under Alaska law, the employee must prove that a

"reasonable person in the employee's position would have felt compelled to

resign." *Charles v. Interior Hous. Auth.*, 55 P.3d 57, 60 (Alaska 2002); *Beard v.*

*Baum*, 796 P.2d 1344, 1349-50 (Alaska 1990). Mere criticism of job performance

is not sufficient to prove constructive discharge. *Cameron v. Beard*, 864 P.2d 538,

547 (Alaska 1993)

> The conditions giving rise to the resignation must be sufficiently
> extraordinary and egregious to overcome the normal motivation of a
> competent, diligent, and reasonable employee to remain on the job to
> earn a livelihood and to serve his or her employer. The proper focus
> is on whether the resignation was coerced, not whether it was simply
> one rational option for the employee.

*Turner v. Anheuser-Busch, Inc.*, 876 P.2d 1022, 1026 (Cal. 1994) (emphasis

added). Thus, even where an employee subjectively believes that his working

conditions are intolerable, he is not justified in quitting unless a reasonable person

in the same or similar circumstances would have found it necessary to quit.

*Sanchez v. Denver Pub. Sch.*, 164 F.3d 527 (10th Cir. 1999).

> **1.     Borgen's claim for constructive discharge fails as a
> matter of law because, assuming that he was being
> "harassed", he had a reasonable alternative to
> quitting.**

Even where an employee has been a victim of unlawful discrimination of

harassment, that fact standing alone, does not necessarily mean that working

conditions are so intolerable as to justify a finding of constructive discharge.

Rather, the employee must notify the employer of the discrimination and give his

employer a reasonable opportunity to address the problem before resigning. *Klein*

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

*v. McGowan*, 198 F.3d 705, 710 (8th Cir. 1999) (holding that the plaintiff in a sexual harassment case had not been constructively discharged because he failed to take reasonable steps to seek relief by filing a complaint of harassment); *Kilgore v. Thompson & Brock Management, Inc.*, 93 F.3d 752, 754 (11th Cir. 1990) (dismissing three of plaintiffs' constructive discharge claims because after reporting sexual harassment the plaintiffs did not return to work and did not give the employer sufficient time to remedy the situation before resigning); *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3rd Cir. 1993) (dismissing a constructive discharge claim because employee had not explored other "alternative avenues thoroughly before coming to the conclusion that resignation is the only option").

In this case, Borgen did have a reasonable alternative to resigning – he could have initiated a timely grievance as spelled out the collective bargaining agreement between UPS and its employees. Each of the alleged acts of "harassment" were either resolved in Borgen's favor or he chose never to grieve them. Courts have routinely granted summary judgment where an employee claims to have been constructively discharged, but the employee failed to take advantage of an employer's grievance procedures. *Bauer v. Board of Supervisors*, 44 Fed.Appx. 194, 201 (9th Cir. 2002) (holding that employee had the reasonable option of filing a grievance so he could not show constructive discharge); *Katz v. Beth Israel Med. Ctr.*, No. 95 CIV 7183, 2001 WL 11064, at *13 (S.D.N.Y. Jan.4, 2001) (availability of grievance under collective bargaining agreement, among other things, defeated constructive discharge claim); *Bozé v. Branstetter*, 912 F.2d 801, 805-06 (5th Cir. 1990) (affirming the district court's grant of summary

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

judgment to the employer on constructive discharge where the employee had options other than resigning, including using an internal grievance process); *Stembridge v. City of N.Y.*, 88 F. Supp. 2d 276, 284-85 (S.D.N.Y. 2000) (no constructive discharge where "[P]laintiff had the opportunity to present his side of the story in the scheduled disciplinary hearing. It is impossible to know whether the hearing could have actually remedied the situation or address the misconduct because plaintiff chose not to participate in the process."); *Silverman v. City of New York*, 216 F. Supp. 2d 108, 116 (E.D.N.Y. 2002) (employee could not show constructive discharge were he had rights under his collective bargaining agreement to grieve employer's actions, but failed to take advantage of this right).

Borgen unquestionably had a right to file a grievance with his employer if he thought that he was being treated unfairly. The "ride alongs", which he complains about, as well as the length of his route are both subjects which are covered by the applicable collective bargaining agreement. *See* Ex. C, WCA Article 19 (an employee has "the right to file a grievance if the Company has continually caused him to work over nine and one-half (9-1/2) hours per day,"); Ex. D. Article 37, Section 3 ("Where an employee has submitted a grievance regarding an excessive number of rides, no member of management shall ride with that employee unless and until the local level hearing is concluded"). Nevertheless, Borgen never filed a grievance. Ex. B at 92-93. Borgen's failure to do so is fatal to his constructive discharge claim.

> **2. UPS's policy of monitoring Borgen's performance with "ride alongs" cannot form the basis of a constructive discharge.**

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

Apart from the fact that Borgen had reasonable alternatives to quitting, such as filing a timely grievance, Borgen's claim of constructive discharge fails for a more fundamental reason – he cannot establish a constructive discharge based on UPS riding with him. An employer's mere supervision of an employee cannot form the basis of a constructive discharge claim. *Heno v. Sprint/United Management Co.*, 208 F.3d 847, 857-58 (10th Cir. 2000) (Employer's and co-workers' acts of moving employee's desk, monitoring her telephone calls, being "chilly" towards her, and suggesting that she might do better in a different department did not amount to constructive discharge; notwithstanding employee's alleged depression attributable to her work conditions, a reasonable employee would not have felt they had no choice but to quit); *Stetson v. NYNEX Service Co.*, 995 F.2d 355, 360 (2nd Cir. 1993) (holding that employee's dissatisfaction with assignments; employee's perception of undue criticism or excessive monitoring; difficult or unpleasant conditions over a period of three years did not constitute constructive discharge as a matter of law); *Clowes v. Allegheny Valley Hospital*, 991 F.2d 1159, 1160-62 (3d Cir.) (unduly close monitoring and undue criticism, although "unfair and unwarranted," did not constitute constructive discharge); *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 735 (7th Cir.2001) (no constructive discharge where supervisors, among other actions, monitored plaintiff to ensure she did not steal from customers); *Hanenburg v. Principal Mut. Life Ins. Co.*, 118 F.3d 570, 575 (8th Cir.1997) (supervisor's close scrutiny of employee's work performance, including personal telephone use, insufficient to support claim of constructive discharge).

It is an employer's responsibility to scrutinize and supervise its

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

employees. In this case, UPS had been told by its computer that Borgen was

taking a longer time with his route than it should have. Ex. B at 85-86. UPS

could not determine why this was the case as the two other drivers who worked

Borgen's route could complete it in the appropriate amount of time.[3] Ex. B at 86-

87. In order for UPS to determine why, it accompanied Borgen on his route to

determine whether it could be done faster. Borgen had never been disciplined

about the amount of time that it took for him to perform his route. Ex. B at 107.

Mere additional supervision cannot establish Borgen's claim of constructive

discharge.

> **B.     Borgen cannot establish that he was a member of the
>         protected class to support his disability discrimination
>         theory.**

Even assuming Borgen could prove an adverse employment action, which

he cannot, his disability discrimination claim would still fail because he cannot

prove that he was a member of the protected class. Borgen must prove that he

suffered from a "disability" within the meaning of AS 18.80. *Moody-Herrera v.*

*State Dept. of Nat. Res.*, 967 P.2d 79, 88 (Alaska 1998).

UPS assumes, for the purposes of this motion, that Borgen's current

diagnosis of post-traumatic stress disorder ("PTSD") means that he is disabled.

However, Borgen's current diagnosis is irrelevant. The applicable time period is

---

[3] Borgen claims that these two drivers were "working off the clock" to
complete their route in the scheduled amount of time. Ex. B at 87-88. Assuming
this was true, there is no evidence that UPS knew about this explaination.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

when Borgen was working at UPS.  There is no evidence that he was disabled under AS 18.80 at that time.

For Borgen to qualify as disabled under AS 18.80.220, his mental impairment must *substantially limit* a major life activity such as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." AS 18.80.300(12); AS 18.80.300(9) (emphasis added). An employee is "substantially limited" where he or she is,

> "[u]nable to perform a major life activity that the average person in the general population can perform; or . . . [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."

29 C.F.R. § 1630.2(j)(1).  Although Borgen has been diagnosed with PTSD, he cannot show that he could not care for himself, perform manual tasks, walk, see, hear, speak, breath, learn or work.  Rather, up until the time he walked off the job at UPS, he had been performing all of these tasks in connection with his job as a driver since 1985.  Ex. B at 35-36.  In fact, Borgen cannot identify how his PTSD affected his life in any way.

Q.   Now with regard to the PTSD, I take it that it's your belief that you were suffering from PTSD while you were employed by UPS.

A.   I couldn't answer that question.

Q.   You don't have an opinion?

A.   Yeah, I have no idea.

. . .

Q.   So my question is if you first started suffering from it when

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

you were in Vietnam, did it simply not reoccur until 2003 or were you suffering from it continuously from the time you served, from Vietnam until the present day?

MR. ACKER [counsel for Borgen]: Objection. I don't think that's within his personal knowledge and I think it's one thing to ask him about if he suffered any symptoms from that . . . Are you asking him if the disease, if he no longer suffers from the disease during that time period or was he suffering from symptoms?

MR. DANIEL [counsel for UPS]: Symptoms.

A. I have no idea. I didn't know what PTSD was before then.

Ex. B at 21-22. Borgen's ability to work on a daily basis demonstrates he is not disabled. *See Brunke v. Goodyear Tire & Rubber Co.*, 344 F.3d 819, 821 (8th Cir. 2003) (an employee was not disabled where he had suffered from epilepsy that had been so severe it had limited his ability to work, but had been able to control the illness for eight years prior to his termination); *EEOC v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001) (holding that a plaintiff's four seizures at work in four years and weekly seizures while sleeping that made her feel tired and wet herself did not constitute a substantial limitation under the ADA). Borgen may have suffered a breakdown at the time that he left UPS, but this does not mean that he was "disabled" while working for UPS.

**C.    Borgen cannot establish that people outside the protected class were treated more favorably for his race and age discrimination claims.**

Borgen cannot establish the fourth element of his *prima facie* case for his race and age discrimination claim. Borgen must prove that others, who were not in the protected class, were treated more favorably. *Haroldsen v. Omni Enters.*, 901 P.2d 426, 430 (Alaska 1995). This is simply not true.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

1.    **Borgen cannot show that racial minorities were treated more favorably with regard to his various complaints.**

Borgen alleges that UPS was out to get him because of his race. Borgen is white. Ex. B at 82. Borgen must therefore prove that UPS treats white people worse than racial minorities. Borgen cannot establish this part of his *prima facie* case because almost all the UPS drivers are also white.

Exhibit E, attached hereto, provides the EEO statistics for UPS drivers as of March 31, 2003 – approximately one month after Borgen walked off the job. Of the 38 drivers for UPS, 29 of them are white (approximately 76%). Borgen's claim that UPS wanted to harass him because he was white simply cannot stand. There is no evidence that UPS was harassing 3/4 of its drivers.

2.    **Borgen cannot show that substantially younger employees were treated more favorably with regard to his various complaints.**

Borgen also alleges that UPS was out to get him because his age.

> the prima facie case requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion. . . .." In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger.

*O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (internal citations omitted). As part of Borgen's *prima facie* case, he must prove that substantially younger employees were treated more favorably. *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 835 (7th Cir. 2005) (holding that former employee had failed to produce a prima facie case of age discrimination when she could not show that a substantially younger employee was treated more favorably);

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

*Balderston v. Fairbanks Morse Engine Div. of Coltec Industries*, 328 F.3d 309, 321 (7th Cir. 2003) (holding that plaintiff had failed to make out a prima facie case because plaintiff did not demonstrate that a "substantially younger" (defined as ten years younger) employee was treated more favorably).

As Exhibit E demonstrates, almost a third of the Anchorage UPS drivers were born before 1956. All of these drivers are less than three and a half years younger than Borgen. Borgen cannot produce any evidence that these employees were treated less favorably.

**III.    To the Extent That Borgen is Alleging Acts of Discrimination Prior to February 25, 2003, These Acts are Barred by the Statute of Limitations.**

Claims under AS 18.80 must be brought within two years after the wrongful conduct's occurrence. *Mahan v. Arctic Catering, Inc.*, No. 6002, S-11184, at 4 (Alaska Apr. 21, 2006). "The two-year limit starts when a party knows or should have known of a claim – usually the date that the alleged incident occurs." *Id.* at 4-5. Borgen filed his complaint in this action on February 25, 2005. Therefore, Borgen must rely on events which occurred after February 25, 2003. The only event which occurred after that time was Borgen suffering a mental breakdown and quitting his job at UPS. Any other claim which Borgen wishes to raise is time-barred.

## CONCLUSION

Borgen cannot establish a claim under AS 18.80. He cannot establish a prima facie case on any of his claims because he cannot establish an adverse employment decision. His disability discrimination claim also fails because there

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108

is no evidence that Borgen was disabled while working for UPS. As to Borgen's age and race discrimination claim, Borgen cannot show that employees outside the protected class were treated more favorably. Borgen's discrimination claims are otherwise time-barred. For the foregoing reasons, the Court should grant summary judgment in this case.

DATED: May 5, 2006.

PERKINS COIE LLP
Attorneys for Defendant


By s/ Thomas M. Daniel
    Thomas M. Daniel
    Alaska Bar No. 8601003


    1029 West Third Ave., Suite 300
    Anchorage, Alaska 99501
    907/279-8561/907-276-3108 (fax)
    tdaniel@perkinscoie.com


I hereby certify that a true and correct
copy of the foregoing will be served
electronically on Dennis Acker this 5th
day of May, 2006.
s/ Thomas M. Daniel

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, Alaska 99501
(907) 279-8561 / Facsimile (907) 276-3108